IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

GRANVILLE BOST,

       Plaintiff,

              Civ. Action No.
              9:04-CV-0246 (GLS/DEP)

  vs.

J. RICHARD BOCKELMANN, *et al.*,

       Defendants.

_____

APPEARANCES:     OF COUNSEL:

FOR PLAINTIFF:

GRANVILLE BOST, *pro se*

FOR DEFENDANT:

MAYNARD, O'CONNOR LAW FIRM  MICHAEL CATALINOTTO, ESQ.
For Defendants Bockelmann    ROBERT A. RAUSCH, ESQ.
 and Ebel
Route 9W
P.O. Box 180
Saugerties, NY 12477

DURR LAW FIRM      MARK A. VENTRONE, ESQ.
For Defendants Kirkpatrick and
Correctional Medical Care, Inc.
103 East Water St.
Suite 304
Syracuse, NY 13202

O'CONNOR, O'CONNOR LAW FIRM     MICHELE MONSERRATE, ESQ.
Attorneys for Defendants Zimmer
and ARAMARK
20 Corporate Woods Boulevard
Albany, New York 12211

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Like most Eighth Amendment deliberate indifference actions, this case calls upon the court to affix the line of demarcation between constitutionally adequate treatment of prison inmates and deliberate indifference to their serious medical needs.  Plaintiff Granville Bost, a current New York State prison inmate who at the relevant times was in local custody at the Ulster County Correctional Facility ("Ulster"), has commenced this civil rights action pursuant to 42 U.S.C. § 1983 alleging that his treatment at Ulster fell on the constitutionally deficient side of that line.  In his complaint Bost asserts that while at Ulster his request for extra portions of food was denied, causing him to experience weight loss and related symptoms, and additionally complains of prison officials' delay in providing him with a prescription inhaler and their failure on occasion to provide him with the daily dose of aspirin which was prescribed, at his request, as a preventative measure.  Plaintiff's complaint seeks

2

compensatory damages in the amount of two million dollars.

The defendants named in plaintiff's complaint fall into three distinct groups, each separately represented, including 1) the Ulster County Sheriff and the Superintendent at Ulster; 2) the company providing contract medical services at Ulster and one of its employees; and 3) the entity retained to provide food services at the facility, again together with one of its employees.  Each of these three groups has now moved seeking dismissal of plaintiff's claims against its constituents.[1]  Because I find, based upon a careful review of the comprehensive record now before the court, that no reasonable factfinder could conclude Bost was subjected to cruel and unusual punishment by any of the defendants, I recommend that summary judgment be entered dismissing his complaint.

I.    BACKGROUND

The period of plaintiff's confinement at Ulster during which the constitutional deprivations at issue are alleged to have occurred

_____

[1]    The three motions currently before the court purport to seek dismissal pursuant to Rules 12(b)(6) and 12(c) of the Federal Rules of Civil Procedure, and as an alternative request the entry of summary judgment in accordance with Federal Rule of Civil Procedure 56.  Because all of the defendants have interposed answers and submitted materials in support of their motions, they have therefore been treated as seeking the entry of summary judgment.

commenced on January 12, 2004, apparently as a result of a conviction for criminal contempt in the first degree which resulted in a prison sentence of six months, to be followed by a period of probation.  Rausch Aff. (Dkt. No. 83) Exh. C, at 9-10; Amended Complaint (Dkt. No. 95) ¶ 5. The evidence regarding plaintiff's weight at the time of his entry into Ulster is equivocal.  An information sheet prepared at the time of plaintiff's booking reflects his height as six feet two inches, and a weight of 160 pounds.  Rausch Aff. (Dkt. No. 83) Exh. D.  An entry in plaintiff's medical records at Ulster, however, reflects that upon his entry into the facility he weighed 170 pounds.[2]  *See* Rausch Aff. (Dkt. No. 83) Exh. E (plaintiff's medical records, hereinafter cited as "MR _____"), at 2.

The day after his admission into Ulster, plaintiff submitted a sick call

---

[2]     According to the defendants, the 170 pound entry was the result of an interview regarding plaintiff's medical history, conducted in accordance with the standard protocol at Ulster.  Kirkpatrick Aff. (Dkt. No. 96) ¶¶ 4-5.  Defendants maintain that that interview took place in a room without scales, and accordingly the recorded weight of 170 pounds was based upon Bost's verbal estimate.  *Id.* ¶¶ 5-6.  Plaintiff, by contrast, maintains that he was physically weighed during his interview with the facility nurse.  Rausch Aff. (Dkt. No. 83) Exh. C, at 59; Bost Response Aff. (Dkt. No. 88) ¶ 14. While it seems unlikely that a jury would accept plaintiff's version, particularly in view of the fact that two days later his weight was recorded at 155 pounds, *see* MR 7, 17, at this procedural juncture plaintiff is entitled to resolution of all ambiguities, and the benefit of all inferences drawn, in his favor. The court therefore accepts plaintiff's claim that he weighed 170 pounds at the time of entry into the facility.

request identifying his medical problem as: "feel weak and losing weight".[3]

MR 25.  That early sick call request was preemptively submitted by the

plaintiff in order to begin the process of seeking double food portions,

based upon his prior experience at Ulster.[4]  *See* Rausch Aff. (Dkt. No. 83)

Exh. C, at 117-18; MR 25.  In response to that request plaintiff was seen

by medical personnel at the facility on January 14, 2004, at which time his

weight was recorded as 155 pounds.  MR 7.  In light of plaintiff's

statements that he was losing weight as a result of "a very fast

metabolism", at that time plaintiff was placed on weekly weight checks.  *Id.*

Based upon his request for medical intervention, plaintiff was

scheduled to see a nurse on January 16, 2004; that appointment,

however, was rescheduled due to a required court appearance by the

plaintiff.  *Id.*  Plaintiff was subsequently seen by a prison nurse two days

---

[3]    Plaintiff's amended complaint alleges that his first sick call slip was submitted at approximately 10:00 pm on January 12, 2004, and included reference not only to his desire for a special diet but also a request for an inhaler.  *See* Amended Complaint (Dkt. No. 95) ¶ 8.  There is no reference in plaintiff's medical records to such a sick call request.

[4]    In 2004 plaintiff was no stranger to Ulster, having been confined there on at least eleven different occasions between 1996 and 2004.  Acevedo Aff. (Dkt. No. 83) ¶ 2; *see also* Rausch Aff. (Dkt. No. 83) ¶ 9 & Exh. C, at 99.  It appears from his records that Bost had previously been at least partially successful in receiving extra helpings of food while at the facility.  *E.g.*, Bost Response Aff. (Dkt. No. 88) Exhs. 19, 23-24.

later, at which time his weight was recorded at 153.5 pounds.  MR 2, 17.

Although the examining nurse expressed her belief that the 170 pound

weight initially recorded was likely in error, as a precautionary measure

she ordered that Bost be provided with a daily health shake to augment

his intake for a seven day period ending on January 24, 2004 in order to

allow time for him to be seen by a prison physician.  MR 10, 12.  That

health shake was provided for plaintiff by personnel employed by

defendant ARAMARK Correctional Services, Inc. ("ARAMARK"), as

directed.[5]  Mayer Aff. (Dkt. No. 98) ¶ 6.

On January 23, 2004 plaintiff was seen by a prison physician

employed by defendant Correctional Medical Care, Inc. ("CMC"), a

company retained to provide medical services at Ulster.  MR 7, 22; *see*

*also* Kirkpatrick Aff. (Dkt. No. 96) ¶ 11.  Based upon his examination the

physician recorded Bost's weight as 154 pounds.  MR 22.  While the

examining physician did not note any deficiencies in plaintiff's health, he

ordered that Bost be provided with a high protein diet for a period of thirty

days, and that his weight be monitored weekly.  MR 6, 11, 12; Kirkpatrick

Aff. (Dkt. No. 96) ¶ 11.

---

[5]     Defendant ARAMARK Correctional Services, Inc. ("ARAMARK") was
sued by plaintiff in this action as "ARAMARK Food Services".

According to the defendants, over the course of the next thirty days, personnel at ARAMARK provided the plaintiff with the prescribed high protein diet, in accordance with specifications contained within ARAMARK's dietary handbook.[6]  Mayer Aff. (Dkt. No. 98) ¶ 7.  The plaintiff maintains, however, that there were lapses in providing the full high protein diet during that time frame, and that at most he received an extra milk as his sole source of extra protein, and even then only on occasion.  Bost Response Aff. (Dkt. No. 88) ¶ 15; Bost Supplemental Response (Dkt. No. 106) ¶ 5.  During that time period, plaintiff's weight was monitored weekly, as directed.  MR 17.  According to plaintiff's medical records, aside from the initial entry – the accuracy of which defendants have questioned – plaintiff's weight increased throughout the course of his confinement at Ulster, having been recorded at various times by prison medical officials as follows:

| Date | Weight | Record Reference |
|------|--------|------------------|
| 1/12/04 | 170 lbs. | MR 2 |

---

[6]       Defendants' motion papers do not disclose specifics regarding the high protein diet at Ulster.  From plaintiff's submissions it appears that the diet includes a guaranty of one quart of milk daily as well as additional sources of protein and citrus for breakfast or as a night snack.  Bost Aff. (Dkt. No. 101) Exh. F; Bost Response Aff. (Dkt. No. 88) Exhs. 13, 27.

| 1/14/04 | 155 lbs. | MR 7, 17 |
| 1/18/04 | 153.5 lbs. | MR 2, 6, 17 |
| 1/23/04 | 154 lbs. | MR 17, 22 |
| 1/29/04 | 158 lbs. | MR 17 |
| 2/6/04 | 155 lbs. | MR 17 |
| 2/13/04 | 158 lbs. | MR 17 |
| 2/21/04 | 160 lbs. | MR 17 |
| 2/26/04 | 158 lbs. | MR 17 |
| 3/20/04 | 161 lbs. | MR 8, 17 |
| 3/27/04 | 163.75 lbs. | MR 8, 17, 29 |
| 4/20/04 | 166 lbs. | MR 17 |
| 5/28/04 | 166 lbs. | Rausch Aff. (Dkt. No. 83) Exh. J, at 2, 7 |
| 6/11/04 | 168 lbs.[7] | Rausch Aff. (Dkt. No. 83) Exh. J, at 6 |

Despite the steps taken on January 23, 2004, plaintiff continued to complain, principally regarding the amount of his food intake.  Those complaints came in the form of repeated sick call slips, as well as

---

[7]     Bost attributes his weight increase to his purchase of extra food and snacks, using money sent to him by family and earned assisting fellow inmates with legal work.  *See*, *e.g.*, Bost Response Aff. (Dkt. No. 88) ¶ 17.

interventions and grievances.[8,9]  In many of those sick call slips and

intervention request forms, plaintiff complained of having no energy and

feeling dizzy.[10]  *See*, *e.g.*, MR 25-27, 29.

Defendant Ellen Kirkpatrick, a nurse employed by defendant CMC

and stationed at Ulster, met with the plaintiff on January 27, 2004 to

discuss his medical concerns, and to assure him that his health condition

was being monitored.  Kirkpatrick Aff. (Dkt. No. 96) ¶ 16; MR 32.  During

that meeting Bost became disruptive, resulting in the issuance of a

misbehavior report and ensuing disciplinary proceedings; that incident led

ultimately to plaintiff being restricted on keeplock confinement for a period

---

[8]        Under the procedures at Ulster, an inmate wishing to complain regarding
his or her care and treatment can file an intervention form with the appropriate housing
unit officer.  Acevedo Aff. (Dkt. No. 83) ¶ 5.  If the matter is not resolved by the housing
unit officer, the form is then forwarded to the unit supervisor for investigation, and the
inmate is advised of its results.  *Id.*  If the investigation does not yield a resolution
acceptable to the inmate, the form is next sent to the tour supervisor who, if unable to
resolve the matter, then provides the inmate with a form allowing him or her to initiate
the grievance process.  *Id.*

[9]        The policy in effect at the relevant times at Ulster requires that an inmate
requesting medical services complete a sick call request, which is submitted to medical
staff during medication rounds.  Acevedo Aff. (Dkt. No. 93) ¶ 4.  The sick call request
is then transmitted to the medical department, where an appointment is scheduled
based upon the first availability of appropriate personnel.  *Id.*  While there is a full time
nursing staff stationed at the facility, a physician is only on site two days per week.

[10]        Plaintiff also attributes a "sharp increase" in his incidents of misbehavior
in 2004 to a chemical imbalance caused by the failure of prison officials at Ulster to
provide him with proper nutrition.  Bost Response Aff. (Dkt. No. 88) ¶ 13.

of ten days.  *Id.*; Acevedo Aff. (Dkt. No. 83) ¶¶ 7, 8.

Plaintiff was released from Ulster on May 10, 2004, but was returned to confinement there on May 28, 2004, apparently as a result of an arrest for a probation violation.  Rausch Aff. (Dkt. No. 83) Exh. C, at 9, 99-100. During this second period of incarceration at Ulster plaintiff did not receive any special diet, nor did he complain of weight loss.  Kirkpatrick Aff. (Dkt. No. 96) ¶ 21.

At the time of plaintiff's initial admission into Ulster he reported suffering from asthma, and requested that he be provided with an inhaler to address his symptoms.[11]  MR 2, 3.  An inhaler was prescribed on January 12, 2004, to be used "PRN", or as necessary.  Kirkpatrick Aff. (Dkt. No. 96) ¶ 19; MR 12.  Plaintiff claims, however – and his medical records tend to confirm – that an inhaler was not provided to him until on or about February 23, 2004.[12]  MR 13.  Aside from one sick call request on

---

[11]    The evidence is equivocal as to whether plaintiff has ever been formally diagnosed as suffering from asthma.  Certain of plaintiff's medical records from Ulster and other facilities are suggestive of a diagnosis of asthma.  *See*, *e.g.*, Bost Aff. (Dkt. No. 88) Exhs. 16, 20; *see also* MR 3.  During his deposition, however, plaintiff conceded that he has never been formally diagnosed as suffering from the condition. Rausch Aff. (Dkt. No. 83) Exh. C, at 20-21, 112.

[12]    Prisoners at Ulster are not allowed to keep asthma inhalers in their jail cells.  Rausch Aff. (Dkt. No. 83) Exh. C, at 47.  Instead inhalers, like other prescription medications, are placed on a medical cart to be provided as needed.  *Id.*

January 16, 2004, in which he complained of difficulty in breathing, *see* MR 26, Bost's medical records lack any reports of asthma attacks.  While plaintiff claims to have inquired regarding his inhaler on several occasions, *see*, *e.g.*, Bost Response Aff. (Dkt. No. 88) ¶ 16; Rausch Aff. (Dkt. No. 83) Exh. C, at 48, his medical records lack reference to any such requests.  Lacking an inhaler, plaintiff was able to control his breathing difficulties through other measures, including hot showers and the intake of hot coffee.  *Id.*

While at Ulster, plaintiff was also allowed a daily dosage of eighty-one milligrams of aspirin as a prophylactic measure, at his request.  Kirkpatrick Aff. (Dkt. No. 96) ¶ 20; MR 12.  On certain occasions, according to the plaintiff, he was provided with either the wrong medication or an improper dosage of aspirin, causing him to experience heartburn.[13]  Rausch Aff. (Dkt. No. 83) Exhs. B, at 2 & C, at 41.  There is no indication in the record of any lasting medical consequences resulting from the alleged, improper administration of the prescribed aspirin.

II.    PROCEDURAL HISTORY

---

[13]    Defendants deny this allegation and assert, based upon his medical records, that Bost received the prescribed dosage of aspirin daily throughout the period of his incarceration at Ulster.  Kirkpatrick Aff. (Dkt. No. 96) ¶ 20.

Plaintiff commenced this action on March 8, 2004.  Dkt. No. 1.

Named as defendants in plaintiff's complaint, as amended, are Ulster

County Sheriff J. Richard Bockelmann; Bradford Ebel, the Superintendent

at Ulster; Correctional Medical Care, Inc. ("CMC"); Ellen Kirkpatrick, a

registered nurse employed at the facility by CMC; ARAMARK; and

Dorothy Zimmer, who is employed by ARAMARK as Manager of Menu

Programs.[14]

On February 5, 2005 defendant Dorothy Zimmer moved seeking

dismissal of plaintiff's claims against her, based upon lack of personal

jurisdiction.  Dkt. No. 39.  That motion resulted in the issuance of an order

by District Judge Gary L. Sharpe on August 10, 2005, Dkt. No. 67, based

upon an earlier report and recommendation from me, dated July 11, 2005,

Dkt. No. 62, denying the motion with leave to renew following discovery.[15]

Now that discovery in the case is closed, each of the three discrete

---

[14]     Plaintiff's initial complaint was ambiguous as to whether it asserted claims against ARAMARK and CMC.  Plaintiff's later-filed amended complaint includes both companies as named defendants, and in their submissions the respective attorneys for those entities appear to have assumed that they are included as defendants in plaintiff's amended complaint. Corporations such as ARAMARK and CMC are "persons" within the purview of section 1983, and thus are subject to potential liability for civil rights violations falling within its ambit.  *Staples v. Virginia Dept. of Corrs.*, 904 F. Supp. 487, 490-91 (E.D. Va. 1995).

[15]     Defendant Zimmer has not refiled seeking dismissal on the basis of lack of personal jurisdiction.

groups of defendants has moved seeking the entry of summary judgment dismissing plaintiff's complaint in its entirety.[16]  Dkt. Nos. 83, 96, 98. While those three motions are separate, they essentially raise the same arguments, alleging the record does not disclose that plaintiff suffers from a serious medical need, nor does the proof reflect deliberate indifference on the part of any of the defendants toward any such need.  *Id.* Defendants' motions, which are now fully briefed and ripe for determination, have been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

A.   Summary Judgment Standard

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  Under that provision, summary judgment is warranted

---

[16]     The motion filed on behalf of ARAMARK and Zimmer fails to include a statement of material facts not in dispute, as required by this court's local rules.  *See* N.D.N.Y.L.R. 7.1(a)(3).  While the court cannot overemphasize the need to comply with this meaningful requirement, I recommend that the court overlook this deficiency in light of the fact that the other two groups of defendants have complied with this requirement and thus the plaintiff, who himself has failed to respond to the Rule 7.1(a)(3) Statements submitted by the other two groups of defendants, was adequately placed on notice regarding the parties' contentions as to the material facts not genuinely disputed.

when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004). A fact is "material", for purposes of this inquiry, if "it might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than merely "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court

14

to consider whether *pro se* plaintiff understood nature of summary judgment process).

When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n. 4; *Security Ins.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party.  *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998).  Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); *see also Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is

appropriate only when "there can be but one reasonable conclusion as to the verdict.").

B.    Deliberate Indifference

At the heart of plaintiff's complaint in this matter is his contention that prison officials at Ulster, including both those charged with oversight of the facility and the companies engaged by contract to provide food and medical services to its inmates, were deliberately indifferent to his serious medical needs by failing to address his claim of requiring extra portions of food in order to guard against weight loss and malnutrition, the delay in providing him with an inhaler to address his asthma-like symptoms, and the failure on occasion to provide him with the daily dosage of aspirin prescribed as a preventative measure to address plaintiff's self-diagnosed coronary concerns.  Defendants maintain that no reasonable factfinder could conclude either that plaintiff suffers from a serious medical need or that they were deliberately indifferent to any such a need.

The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society."

*Estelle v. Gamble*, 429 U.S. 97, 102, 104, 97 S.Ct. 285, 290, 291 (1976); *see also Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1076, 1084 (1986) (citing, *inter alia*, *Estelle*).  While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement; thus the conditions of an inmate's confinement are subject to Eighth Amendment scrutiny.  *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392, 2400 (1981)).

A claim alleging that prison conditions violate the Eighth Amendment must satisfy both an objective and subjective requirement – the conditions must be "sufficiently serious" from an objective point of view, and the plaintiff must demonstrate that prison officials acted subjectively with "deliberate indifference".  *See Leach v. Dufrain*, 103 F. Supp.2d 542, 546 (N.D.N.Y. 2000) (Kahn, J.) (citing *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321 (1991)); *Waldo v. Goord*, No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. & Homer, M.J.); *see also*, *generally*, *Wilson*, 501 U.S. 294, 111 S. Ct. 2321.  Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference

could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1978; *Leach*, 103 F. Supp.2d at 546 (citing *Farmer*); *Waldo*, 1998 WL 713809, at *2 (same).

### 1.    Serious Medical Need

Plaintiff's claims implicate three separate medical needs, deemed by him to be sufficiently serious as to trigger the protections guaranteed under the Eighth Amendment, including 1) a "fast metabolism", resulting in weight loss; 2) asthma; and 3) an unspecified and undiagnosed condition, requiring him to take one aspirin daily.  Defendants maintain that none of these conditions rises to a level of constitutional significance.

In order to state a medical indifference claim under the Eighth Amendment, a plaintiff must allege a deprivation involving a medical need which is, in objective terms, "'sufficiently serious'".  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (citing *Wilson*, 501 U.S. at 298, 111 S. Ct. at 2324), *cert. denied sub nom.*, *Foote v. Hathaway*, 513 U.S. 1154, 115 S. Ct. 1108 (1995).  A medical need is serious for constitutional purposes if it presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain'."  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)

(citations omitted).  A serious medical need can also exist where "'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain'"; since medical conditions vary in severity, a decision to leave a condition untreated may or may not be unconstitutional, depending on the facts.  *Harrison v. Barkley*, 219 F.3d 132, 136-37 (2d Cir. 2000) (quoting, *inter alia*, *Chance*).  Relevant factors in making this determination include injury that a "'reasonable doctor or patient would find important and worthy of comment or treatment'", a condition that "'significantly affects'" a prisoner's daily activities, or causes "'chronic and substantial pain.'"  *Chance*, 43 F.3d at 701 (citation omitted); *LaFave v. Clinton County*, No. CIV. 9:00CV774, 2002 WL 31309244, at *2-*3 (N.D.N.Y. Apr. 3, 2002) (Sharpe, M.J.).

a)   Weight Loss

The primary focus of plaintiff's claims in this action is upon defendants' failure to meet his dietary expectations.  While plaintiff has described himself as having a "fast metabolism", the record before the court fails to disclose a diagnosis by any medical professional that he suffers from a medical condition requiring the high calorie diet which he so persistently sought while at Ulster.  *See* Rausch Aff. (Dkt. No. 83) Exh. C,

19

at 16-17.  It is true that however implausible it may seem, when all ambiguities are resolved in his favor, the record demonstrates an initial weight loss, following his admission into Ulster, from 170 pounds on January 12, 2004 to 155 pounds two days later.  The record also reveals, however, that following that weight loss plaintiff was initially provided with health shakes and, upon having seen a doctor a short time later, was found to be in good health and placed upon a thirty day high protein diet.  The record also reflects that plaintiff's situation was closely monitored during his initial period of incarceration in 2004, revealing an upward trend in his weight, and with no recorded indication that plaintiff suffered from any ill effects as a result of his claimed weight loss.

Simply stated, there is no evidence in the record from which a reasonable factfinder could conclude that plaintiff's food intake and weight loss concerns represented a condition of urgency or resulted in degeneration or extreme pain sufficient to implicate an Eighth Amendment violation.  Plaintiff's self-diagnosis of a fast metabolism, when viewed in this context, fails as a matter of law to rise to a level sufficient to support a finding of serious medical need.  *Word v. Croce*,169 F.Supp.2d 219, 226 (S.D.N.Y. 2001) (self-diagnosis by plaintiff of irritable bowel syndrome

deemed insuffiicent to support a claim of a serious medical need requiring a special diet).

### b) Asthma-Like Condition

For purposes of evaluating defendants' summary judgment motions plaintiff's asthma condition potentially stands on different footing. Although plaintiff does not describe the extent of his asthma or its attendant symptoms, when plaintiff is given the benefit of every inference such a condition could potentially be viewed as a serious medical condition. Some courts have opined that under appropriate circumstances asthma can represent a serious medical need of constitutional significance. *See Flemming v. Velardi*, No. 02 Civ.4113, 2003 WL 21756108, at *2 (S.D.N.Y. July 30, 2003) ("Difficulty breathing due to asthma may be a serious medical condition, depending on the severity of the asthma attack."). Such cases, however, typically involve circumstances where active asthma symptomology is presented, in the form of asthma attacks. *See Scott v. DelSignore*, No. 02-CV-029, 2005 WL 425473, at *9 (W.D.N.Y. Feb. 18, 2005) (acknowledging distinction between having asthma condition and actually experiencing attack; collecting cases); *Flemming*, 2003 WL 21756108, at *2 (same); *Patterson*

*v. Lilley*, No. 02 Civ.6056, 2003 WL 21507345, at *4 (S.D.N.Y. June 30, 2003) ("Being an asthmatic (a person susceptible to asthma attacks) is not a condition, in Eighth Amendment parlance, that is severe or 'sufficiently serious.'  The existence of the condition is distinct from the situation in which an inmate is suffering an actual attack.").

As was noted earlier, the evidence in this case is equivocal as to whether plaintiff has been formally diagnosed as suffering from asthma, and plaintiff himself has acknowledged that no such diagnosis has ever been made.  Rausch Aff. (Dkt. No. 83) Exh. C, at 20.  Moreover, there is no medical evidence in the record to substantiate that plaintiff suffered from an asthma attack or other symptoms associated with asthma during the time of his incarceration at Ulster.  Nonetheless, plaintiff has been diagnosed as suffering from asthma-like symptoms in the past, Bost Aff. (Dkt. No. 88) Exhs. 16, 20, and there is one sick call slip in the record, submitted by plaintiff on January 16, 2004, reporting "astma [sic] hard time breathing".  MR 26.  Under these circumstances, with plaintiff being given the benefit of every inference, I recommend against a finding that no reasonable factfinder could conclude that plaintiff's asthma-like condition constitutes a serious medical condition sufficient to warrant Eighth

22

Amendment protection.  *Contrast Patterson*, 2003 WL 21507345, at *4

(asthma not serious medical need when the plaintiff did not allege any

discomfort or any symptoms of an emergent attack).

c) <u>Aspirin Prescription</u>

The final component of plaintiff's Eighth Amendment claims

surrounds his need for a daily dosage of aspirin.  During his deposition

plaintiff acknowledged that the prescription by prison medical officials for a

daily dose of aspirin was at his request, with no indication that any

medical practitioner had diagnosed him as suffering from any condition

requiring such a prophylactic measure.  Rausch Aff. (Dkt. No. 83) Exh. C,

at 121-22.  Absent evidence that the aspirin prescription was required to

address a condition of sufficient urgency, or one likely to result in

degeneration or extreme pain – of which evidence is wholly lacking in the

record – I recommend a finding that plaintiff's unspecified condition

requiring his daily dosage of aspirin is not sufficiently serious to support

an Eighth Amendment claim.

2. <u>Deliberate Indifference</u>

Defendants' motions also allege that the record is wholly devoid of

evidence of their deliberate indifference to any of plaintiff's cited

23

conditions.  This, they contend, provides an independent basis for dismissal of plaintiff's claims.[17]

Deliberate indifference, in a constitutional sense, exists if an official knows of and disregards an excessive risk to inmate health or safety; the official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979; *Leach*, 103 F. Supp.2d at 546 (citing *Farmer*); *Waldo*, 1998 WL 713809, at *2 (same).

It is well-established that mere disagreement with a prescribed course of treatment, or even a claim that negligence or medical malpractice has occurred, does not provide a basis to find a violation of the Eighth Amendment.  *Estelle*, 429 U.S. at 105-06, 97 S. Ct. at 201-02; *Chance*, 143 F.3d at 703; *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y.),

---

[17]     Defendants Zimmer, Bockelman and Ebel also claim that regardless of whether the record is conducive to supporting a finding of deliberate indifference on someone's part toward plaintiff's conditions, it is lacking in any evidence of their personal involvement in that indifference.  Since personal involvement in a constitutional violation is a prerequisite to a finding of liability, and the evidence is, as they suggest, utterly lacking in evidence of their awareness of plaintiff's condition and participation in the alleged indifference by prison officials to that condition, those three defendants would be entitled to dismissal of plaintiff's claims against them on the basis of lack of personal involvement. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted); *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

*aff'd*, 970 F.2d 896 (2d Cir.), *cert. denied*, 506 U.S. 1040, 113 S. Ct. 828 (1992).  Because decisions regarding diagnostic techniques and treatments to be administered are considered to be matters best left to medical judgments, prison medical personnel are vested with broad discretion to determine what method of diagnosis and/or treatment to provide to their patients.  *Estelle*, 429 U.S. at 107, 97 S. Ct. at 293; *Chance*, 143 F.3d at 703; *Rosales v. Coughlin*, 10 F. Supp.2d 261, 264 (W.D.N.Y. 1998).

a)   <u>Weight Loss</u>

Plaintiff's weight loss complaint challenges, at least indirectly, the constitutional adequacy of the food portions provided at Ulster.  The Eighth Amendment requires only that prisoners receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing.  *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993) (citing *Cunningham v. Jones,* 567 F.2d 653, 659-60 (6th Cir. 1977)).  While prison officials are duty bound to provide inmates with nutritionally adequate food, "absent religious or medical[ly] peculiar circumstances, a prisoner does not have a right to a specialized diet while incarcerated[.]"  *Maulding v. Peters*, 92 C 2518, 1995 WL 461914, at *5 (N.D. Ill. Aug. 2, 1995); *see Word*, 169 F.

25

Supp.2d at 226 (citing *Maulding*).  As one court has noted,

> [i]nmates cannot expect the amenities, conveniences and services of a good hotel; however, the society they once abused is obliged to provide constitutionally adequate confinement.  The constitutional test requires courts to look to "the evolving standards of decency that mark the progress of a maturing society."

*Harris v. Fleming*, 839 F.2d 1232, 1235-36 (7th Cir. 1988) (quoting and citing, *inter alia*, *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S. Ct. 2392, 2399 (1981)).

In this instance plaintiff maintains that his unique medical condition made the food intake provided at Ulster constitutionally inadequate. The record fails to support this claim, however, instead revealing that when asked to address plaintiff's weight loss, medical officials at Ulster promptly responded by implementing interim measures until Bost could be seen by a doctor, including providing him with health shakes and ordering that his weight be closely monitored.  A short time after registering his initial complaint plaintiff was seen by a doctor and, after a determination was made that his weight had stabilized and indeed was increasing, the shakes were discontinued and replaced with a thirty day high protein diet. To the extent that plaintiff complains about having been prescribed a high

protein diet, as distinct from the high calorie intake diet which he sought in order to secure extra portions of food, the claim fails to rise to a level of constitutional significance, instead merely representing the sort of disagreement with a prescribed course of treatment that does not establish a defendant's deliberate indifference to a degree necessary to establish an Eighth Amendment violation.  *See LaFave*, 2002 WL 31309244, at *5.

It is true that when the record is interpreted in a light most favorable to him certain prison officials, including those employed by ARAMARK, may have failed on occasion to be faithful to the high protein diet for the thirty day period during which it was to be administered.  According to Bost, for example, there were certain days in which he did not receive his proper allotment of milk under the ARAMARK high protein diet, and rarely did he receive the other nutritional supplements specified in the diet.  *See* Bost Response Aff. (Dkt. No. 88) ¶¶ 15, 18 & Exhs. 01-05.  There is no evidence in the record, however, to suggest that this deprivation was deliberate and calculated to deprive the plaintiff of the nourishment constitutionally required and necessary to avoid additional weight loss, as distinct from the result of negligent oversight which does not rise to a level

27

of deliberate indifference. *Abdush-Shahid v. Coughlin*, 933 F.Supp. 168, 180 (N.D.N.Y. 1996) (Koeltl, J.) ("Mere negligence or inadvertent failure to provide a medically necessary diet is not a constitutional violation[.]"). Simply stated, the evidence is lacking that any of the constituent groups sued in this action, including the county defendants, prison medical personnel, and the food service providers at Ulster, were both cognizant of a serious medical need on the part of the plaintiff and aware that their failure to be faithful in providing the prescribed high protein diet would result in a substantial risk of serious harm.

b)    Asthma-Like Condition

The record is also lacking in evidence of any indifference toward plaintiff's asthma-like condition.  While there was a delay in providing him with the prescribed inhaler, aside from one instance of reported shortness of breath there is no medical evidence in the record to establish that he suffered from any asthma-like symptoms during the interim, and indeed his medical records fail to establish any requests by Bost for use of his inhaler during the entire period of his confinement during 2004.  Plaintiff himself has acknowledged that he was able to address his shortness of breath through other less severe means, including drinking hot coffee and

28

taking hot showers.  Rausch Aff. (Dkt. No. 83) Exh. C, at 48.  The brief

delay in providing the plaintiff with his requested inhaler, particularly in

light of the lack of any evidence of any asthma attacks in the intervening

period, fails to establish deliberate indifference to that condition.  *Lighthall*

*v. Vadlamudi*, No. 9:04-CV-0721, 2006 WL 721568, at *10 (N.D.N.Y. Mar.

17, 2006) (Mordue, J. & Treece, M.J.) (delay in providing necessary

medical care does not constitute deliberate indifference "unless it involves

an act or failure to act that evinces 'a conscious disregard of a substantial

risk of serious harm'", quoting, *inter alia*, *Thomas v. Nassau County Corr.*

*Ctr.*, 288 F. Supp.2d 333, 339 (E.D.N.Y. 2003)).

c)   <u>Aspirin Prescription</u>

The record is similarly lacking in any evidence of indifference by the

defendants toward plaintiff's self-prescribed daily dose of aspirin.  The

evidence before the court is strongly suggestive of the fact that plaintiff

received his daily dosage of aspirin each day while confined at Ulster.

While plaintiff claims that on certain occasions he received more than the

prescribed eighty-one milligrams of aspirin, even assuming the overdose

was intentional there is no indication that the defendants were aware of

and intended to cause plaintiff to incur a serious risk of harm, and indeed

29

by plaintiff's own account the only adverse effects experienced by him

from the overdose was slight heartburn.  Rausch Aff. (Dkt. No. 83) Exhs.

B, at 2 & C, at 41.  Under these circumstances there is no basis upon

which a reasonable factfinder could conclude that the defendants were

deliberately indifferent toward the need which resulted in the daily aspirin

prescription.

C.    Retaliation

The court's obligation, in addressing a motion challenging the legal

sufficiency of a *pro se* plaintiff's claims, is to interpret those claims broadly

and consider the strongest arguments which the plaintiff may make based

upon the circumstances presented.  *See Perez v. Metropolitan Corr.*

*Center Warden*, 5 F.Supp.2d 208, 211 (S.D.N.Y. 1998).  When judged

against this backdrop plaintiff's amended complaint, and in particular his

third cause of action, could be regarded as alleging a claim of retaliation,

based upon his assertion that as a result of voicing complaints regarding

defendants' failure to provide him with the requested, high calorie diet, he

was placed in keeplock confinement.

In order to state a *prima facie* claim under section 1983 for

retaliatory conduct, a plaintiff must advance non-conclusory allegations

30

establishing that 1) the conduct at issue was protected; 2) the defendants took adverse action against the plaintiff; and 3) there was a causal connection between the protected activity and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576 (1977); *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001). If the plaintiff carries this burden, the defendants must show by a preponderance of the evidence that they would have taken action against the plaintiff "even in the absence of the protected conduct." *Mount Healthy*, 429 U.S. at 287, 97 S.Ct. at 576. If taken for both proper and improper reasons, then, state action may be upheld if the action would have been taken based on the proper reasons alone. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citations omitted).

As can be seen, evaluation of claims of retaliation is a particularly fact-laden exercise, since such claims entail analysis of both the protected conduct at issue, and the cause and effect relationship between that conduct and adverse action ultimately taken by prison officials. In addressing this portion of plaintiff's claim I assume, without deciding, that

his voicing of complaints regarding his food intake for defendants' failure to honor his dietary requests constituted protected activity entitled to First Amendment protection.  Similarly, I treat plaintiff's ten day period of keeplock confinement as a sufficiently adverse action to satisfy the second element of the governing test.  What is wholly lacking in the record now before the court, however, is any indication that the keeplock confinement resulted from plaintiff's voicing of complaints, as distinct from the manner in which those complaints were voiced.

In her affidavit, Nurse Kirkpatrick alleges that when Bost was given the opportunity to discuss the issue with medical staff, including Kirkpatrick herself, he "became irrate[sic]" and engaged in "unacceptable behavior", requiring that disciplinary action be taken against him. Kirkpatrick Aff. (Dkt. No. 96) ¶ 16.  The incident report completed by Nurse Kirkpatrick on January 24, 2004 regarding the incident describes Bost as having engaged in conduct described as "Disrespect Towards Staff", and stating "I will not debate [with] BOCES Grads."  MR 32.

Plaintiff has offered no evidence to support the contention that defendants' stated reasons for punishing him with keeplock confinement – to address his disrespect toward staff – were pretexual and instead

32

intended to silence his complaints.  Because plaintiff's retaliation claim

has been alleged in only conclusory form, and is not supported by

evidence now in the record establishing a nexus between any protected

activity and the adverse actions complained of, I recommend that

summary judgment be entered dismissing plaintiff's retaliation claims.[18]

*Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

IV.    <u>SUMMARY AND RECOMMENDATION</u>

A thorough review of the comprehensive record now before the

court fails to disclose evidence from which a reasonable factfinder could

conclude that plaintiff suffers from a condition of urgency, or one likely to

cause degeneration or extreme pain, sufficient to constitute a serious

medical need meriting Eighth Amendment protection, except as to his

asthma-like condition.  Turning to the deliberate indifference prong of

plaintiff's claims, from the record now before the court no reasonable

factfinder could conclude that the defendants were deliberately indifferent

---

[18]    Plaintiff could perhaps argue that he was denied the opportunity to present such evidence by virtue of the fact that defendants have not moved for summary judgment dismissing any retaliation claim which may be included within in his complaint.  For this reason, I recommend that when filing his objections, Bost be permitted to present whatever <u>additional</u> evidence not now before the court that would establish both pretext and a nexus between plaintiff's protected activity and the resulting disciplinary action.

to any of the serious medical needs alleged by the plaintiff.  It is therefore hereby

RECOMMENDED, that defendants' motions for summary judgment dismissing plaintiff's complaint (Dkt. Nos. 83, 96, 98) be GRANTED, and plaintiff's complaint be DISMISSED in its entirety.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties by regular mail.

Dated:   June 5, 2006
         Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

G:\prisoner\2004\04-CV-0246\rep-rec.wpd

34